UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GEORGE A. DEBOLT,

        Plaintiff,

vs.   Case No. 2:13-cv-504-FtM-29UAM

DR. SAWYER, CAPTAIN ANDERSON, FNU
BELOFF, FNU OATES, and DEPARTMENT OF
CHILDREN AND FAMILIES,

        Defendants.
_____

## ORDER OF DISMISSAL

This matter comes before the Court upon review of the file. Plaintiff George DeBolt, who is civilly confined pursuant to Florida's Involuntary Civil Commitment of Sexual Predator's Act,[1] at

---

[1] The Florida legislature enacted the Sexual Violent Predators Act, Fla. Stat. §§ 394.910-.913, by which a person determined to be a sexually violent predator is required to be housed in a secure facility "for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." § 394.917(2). The Act was promulgated for the dual purposes "of providing mental health treatment to sexually violent predators and protecting the public from these individuals." Westerheide v. State, 831 So. 2d 93, 112 (Fla. 2002); Kansas v. Hendricks, 521 U.S. 346 (1997)(holding that the Kansas Sexually Violent Predator Act did not establish criminal proceedings, and involuntary confinement pursuant to the Act was not punitive). Civil commitment under the Act involves several steps. First, the Act requires a mental evaluation of any person who has committed a sexually violent offense and is scheduled for release from prison or involuntary confinement. See generally Fla. Stat. § 394.913. The evaluation is conducted by a multi-disciplinary team of mental health professionals who must determine whether the individual meets the definition of a "sexually violent predator." After the evaluation, the state attorney may file a petition with the circuit court alleging that the individual is a sexually violent predator subject to civil commitment under the Act. Id. If the judge determines
(continued...)

the Florida Civil Commitment Center ("FCCC"), initiated this action by filing a motion for a preliminary injunction (Doc. #1) on July 9, 2013. Plaintiff's motion for leave to proceed *in forma pauperis* was granted. Doc. #19. Plaintiff is now proceeding in this case on his Amended Complaint (Doc. #8, Amended Complaint), filed on August 7, 2013. The Amended Complaint names the following defendants: Dr. Sawyer, Captain Anderson, Mr. Beloff, Mr. Oates, and the Department of Children and Families. Amended Complaint at 1. The Amended Complaint raises Fourth and Fourteenth Amendment violations stemming from GEO's authority to implement rules and policies at the FCCC and specifically challenges changes in GEO's "electronic media policy."[2] Liberally construed, the Amended

---

[1](...continued)
that probable cause exists that the individual is a sexually violent predator, then the judge will order the individual to remain in custody. Id. § 394.915. Thereafter, a jury trial, or a bench trial if neither party requests a jury trial, will commence. Id. If the jury finds that the individual is a sexually violent predator by clear and convincing evidence, then the individual will be committed to the custody of the Department of Children and Family Services for "control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." Id. § 394.917.

[2]Under the portion of the Amended Complaint entitled "federal and state claims," Plaintiff writes:

> 1. Violation of the U.S.C. **Fourth Amendment**. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or
> (continued...)

Complaint also alleges a First Amendment claim stemming from the restrictions set forth in the electronic media policy. See generally Id. at 4.

Plaintiff contends that his Fourteenth Amendment rights are being violated because defendants are enforcing policies and rules that "are not properly promulgated by DCF and Tallahassee." Id. at 7. Plaintiff specifically takes issue with changes in the

---

²(...continued)
  affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

  2.   Violation of the U.S.C. **Fourteenth Amendment** right to equal protection clause to provide mental health, Civil Commitment Florida Administrative Code Rules. [F]or a class of people under the **JIMMY RYCE ACT, Due Process Clause** to personal and legal property. [Professional judgment. [S]ubstantive due process in applying seclusion and restraints, and medical deliberate indifference.

Amended Complaint at 4 (emphasis and errors in original).

The Amended Complaint contains no factual allegations whatsoever supporting an Equal Protection claim, or any facts regarding "seclusion and restraints" or "medical deliberate indifference." See id.

Liberally construed, the Court will address Plaintiff's Fourth Amendment claim stemming from the alleged searches and seizures to enforce the electronic media policy; a Fourteenth Amendment claim stemming from GEO allegedly making rules not properly promulgated; and, a First and Fourteenth Amendment claim stemming from the restrictions imposed in the electronic media policy and confiscation of electronic media that do not comply with the policy.

"electronic media policy," which limits the quantity and capacity of personal electronic devices. See generally id.

With respect to the electronic media policy, Plaintiff alleges that "for more than six years" FCCC residents were allowed "to receive" and "utilize" "electronic storage devices . . . of varying types, quantities, and capacities." Id. ¶8; see also ¶ 13 (noting FCCC residents were permitted "MP3 players IPODs, digital media players, USB Flash/Jump drives, SD cards and USB External Hard Drives"). According to the Amended Complaint, in recent years due to security concerns at the FCCC, specifically residents being found with pornography, the FCCC's electronic media policy has become more restrictive. Id. ¶13, ¶17, ¶19. The current electronic media policy in pertinent part:

> allows FCCC residents to purchase electronic devices only from approved vendors and not receive them from home (Id. at ¶4);
>
> limits the quantity of electronic devices to: 1, 8 gigabyte storage device and 1, MP3 player (Id. at ¶22, ¶23, ¶25)
>
> precludes possession of a re-writeable compact disc (Id. at ¶25)
>
> precludes possession of "memory cards," thereby making a gaming console called the "PSP 3000" inoperable (Id. at ¶23)

Plaintiff submits that the FCCC residents were given the option to mail devices home that did not satisfy the new policy prior to the policy taking effect. Id. at ¶4. Plaintiff alleges that FCCC official conduct searches of FCCC resident's dormitories to enforce

the electronic media policy in violation of his Fourth Amendment rights. Id. at ¶1, ¶19, ¶20.

**I.**

Despite Plaintiff's non-prisoner status,[3] the Court is required to review the Amended Complaint to determine whether the Complaint is frivolous, malicious or fails to state a claim. See 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). In essence, § 1915(e)(2) is a screening process, to be applied *sua sponte* and at any time during the proceedings. Under § 1915, the Court shall dismiss if the Court determines that the action is "frivolous or malicious"; "fails to state claim on which relief may be granted"; or, "seeks monetary relief from a defendant who is immune from such relief." Id. Because Plaintiff is proceeding *in forma pauperis* in this matter, this action is subject to screening for dismissal under § 1915.

In determining the sufficiency of a *pro se* complaint, the Court must construe the *pro se* allegations in a liberal fashion. Erickson v. Pardus, 551 U.S. 89, 94 (2007)(citations omitted);

---

[3]The Court recognizes that certain portions of the Prison Litigation Reform Act are not applicable to Plaintiff as a civil detainee. Troville v. Venz, 303 F.3d 1256, 1260 (11th Cir. 2002). The United States Court of Appeals for the Eleventh Circuit previously found that a district court did not err by dismissing a complaint filed by a civil detainee for failure to state a claim under the *in forma pauperis* statute, 28 U.S.C. Section 1915 (e)(2)(B). Id. at 1260. Other Courts have also found that section 1915(e)(2)(B) is not limited to prisoners, but applies to all persons proceeding *in forma pauperis*. See Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001).

Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003). The Court must also accept as true all of the allegations in the complaint. Boxer v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006). The Court need not, however, credit a *pro se* plaintiff's "bald assertions" or "legal conclusions." Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1357 (3d ed. 2013) (noting that courts, when examining 12(b)(6) motions, have rejected "legal conclusions," "unsupported conclusions," "unwarranted references," "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions case in the form of factual allegations.")

The standards that apply to a dismissal under Fed. R. Civ. P. 12(b)(6) apply to a dismissal under § 1915. Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008); Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1278-79 (11th Cir. 2001); Mitchell v. Carcass, 112 F.3d 1483, 1490 (11th Cir. 1997). Thus, a complaint is subject to dismissal for failure to state a claim if the facts as plead do not state a claim for relief that is plausible on its face. Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007). A claim is plausible where the plaintiff alleges facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable

expectation that discovery will reveal evidence" that supports the plaintiff's claim. Twombly, 550 U.S. at 556. Specifically, although a complaint "does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citations omitted). Thus, "the-defendant-unlawfully harmed me accusation" is insufficient. Ashcroft, 129 S. Ct. at 1949. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id.

## II.  Analysis

### A.  Claims Regarding GEO's Implementation of Policies

The Amended Complaint raises a Fourteenth Amendment claim, alleging that GEO's policies have not been "properly promulgated" by "DCF and Tallahassee." Amended Complaint at 6. The Court cannot conceive of any federal constitutional violation stemming from GEO's implementation of policies to operate the FCCC irrespective of whether "DCF and Tallahassee" has been involved.

As previously stated, the Florida legislature enacted the SVP Act in order to civilly detain sexually violent predators in a secure facility "for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." Fla. Stat.

§ 394.917(2). The Act expressly provides that the Department of Children and Families may "contract with a private entity . . . for operation of facilities." § 394.9151. Thus, the Florida legislature has given authority to DCF to contract with GEO to operate the FCCC via State statute, which was been deemed constitutional. See Despart v. Kearney, Case No. 2:02-cv-4-FtM-29DNF (M.D. Fla. 2006)(discussing constitutionality of Florida's Jimmy Ryce Act, now known as the SVP Act). In order for GEO to operate the FCCC, GEO obviously had to make policies pertaining thereto and apparently has done so. By virtue of DCF's authority to contract with GEO to operate the FCCC, GEO has the authority to implement policies to operate the FCCC.

To the extent the Amended Complaint attempts to allege a Fourteenth Amendment violation because the rules at the FCCC are not "properly promulgated," all the Fourteenth Amendment requires is prior notice, or "fair warning," of proscribed conduct before a sanction may be imposed. Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). A review of the Amended Complaint evidences that Plaintiff clearly has notice before policies are implemented and is in fact aware of the nuisances in the electronic media policy. See generally Amended Complaint. Therefore, the Court finds the Amended Complaint fails to state any federal Constitutional violation arising from GEO's promulgation of policies, specifically the electronic media policy, at the FCCC. See Debolt v. Sawyer,

Case No. 2:13-cv-420-FtM-29DNF, 2013 WL 3786632 (M.D. Fla. July 18, 2013)(finding no federal constitutional violation stemming from GEO's promulgation of rules to operate the FCCC); Hayes v. Sec'y, Dep't of Children & Families, Case No. 4:10-cv-541-MP-CAS, 2010 WL 5421713, *8 (N.D. Fla. Sept. 26, 2013)(same).

**B. Electronic Media Policy**

Liberally construed, the Amended Complaint alleges a First and Fourteenth Amendment claims stemming from GEO's electronic media policy. As set forth above, the electronic media policy, which apparently was modified in the later part of 2013, limits the quantity of electronic devices each FCCC resident can possess and limits the capacity of those electronic devices due to security concerns and rehabilitative goals. According to the Amended Complaint, the ability to have electronic devices effects the resident's daily life at the FCCC ranging from legal work saved on the electronic devices, use of gaming consoles, and use of computers at the FCCC's designated computer lab. See generally Amended Complaint

1. First Amendment

To the extent the Amended Complaint sets forth a First Amendment claim arising from the electronic media policy, it is governed by a "modified Turner"[4] standard. See Pesci, 730 F.3d 1291, 1297 (11th Cir. 2013) (setting forth standard by which to

---

[4]Turner v. Safley, 482 U.S. 78 (1987).

analyze First Amendment claims arising at the FCCC and noting minor modifications in the Turner test to account for fact that FCCC residents are not "criminally" confined but nevertheless encounter similar security concerns due to confinement). Other courts addressing similar electronic media policy claims from their respective state's civilly detained sexually violent predators have applied a similar standard and rejected any First Amendment violation. Singer v. Raemisch, 593 F.3d 529, 539 (7th Cir. 2010) (affirming district court order on summary judgment finding policy banning fantasy role-playing video game rationally related to security concerns at detention center housing sexually violent predators); Anderson v. DaCosta, Case No. 10-5835, 2011 WL 2223713, *12 (D.N.J. June 1, 2011) (dismissing pursuant to § 1915 claims involving sexually violent predator's confiscation of electronic devices pursuant to policy that restricted certain electronic equipment (including memory sticks, flash drives, thumb drives, detachable external drives, data storage devices, X-box Elite, Play Station 3, Wii game systems, remote controls with digital read out or viewing screens) because policy was reasonably related to legitimate security concerns); Smego v. Ashby, Case No. 10-cv-3240, 2011 WL 6140661, *2-*3 (C.D. Ill. Dec. 9, 2011) (dismissing *sua sponte* Complaint raising claims stemming from policy that limited access to "all" media and banned personal laptop computers as reasonably related to legitimate security concerns posed at the

center that civilly confined sexually violent predators); Belton v. Singer, Case No. 10-6462, 2011 WL 2690595 (D.N.J. July 8, 2011) (dismissing *sua sponte* under § 1915 claims arising from implementation of media policy that restricted sexually violent predator's access to memory sticks, flash drive, thumb drives, detachable or external drives, data storage devices, X-Box Elite, PS-3 (Play Station 3), Wii, and remote controls with digital read out or viewing devices, as reasonably related to legitimate institutional interests of security and orderly running of the detention center); Lingle v. Kibby, Case No. 11-cv-3101, 2011 WL 6091736, *1-*2 (Dec. 7, 2011) (dismissing *sua sponte* claims concerning media policy that restricted gaming consoles and other electronic devices); Hedgespeth v. Bartow, Case No. 09-cv-246-slc, 2010 WL 2990897, *6-*9 (W.D. Wis. July 27, 2010) (on summary judgment, finding media policy that banned personal computers, certain movies, certain video games and gaming systems, and limited internet usage, instituted at center that civilly detained sexually violent predators was reasonably related to legitimate institutional concerns).

In evaluating a claim under the Turner test, the Court should consider the following factors:  (1) whether there is a "valid, rational connection" between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional

right that remain open to the residents; (3) whether, and the extent to which, accommodation of the asserted right will have an impact on facility staff, other residents and the allocation of the facility's resources generally; and, (4) whether the regulation represents an "exaggerated response" to the facility's concerns. Turner, 482 U.S. at 89-91; Hakim v. Hicks, 223 F.3d 1244, 1247-48 (11th Cir. 2001). In considering these factors, the court should defer to the "informed discretion of correctional officials." Turner, 482 U.S. at 90.

Here, this Court finds the first Turner factor is satisfied because the changes in the electronic media policy restricting the quantity and the capacity of electronic devices are reasonably related to the legitimate institutional interests of security and orderly running of the FCCC. See Amended Complaint at ¶ 17 (noting GEO explained that the need to revise the policy was "because of the man-hours required to conduct surveillance for contraband (i.e. pornography)"). GEO clearly has a legitimate interest in maintaining security and the orderly operation of the FCCC by restricting the quantity and capacity of the residents' electronic devices. The electronic media policy permits FCCC residents to have personal electronic devices, but merely restricts the quantity and capacity of these devices. Thus, the electronic media policy set forth in the Amended Complaint does not show an exaggerated response from GEO in modifying its prior electronic media policy,

which was entirely unrestrictive. Plaintiff suggests in his Amended Complaint that the facility could purchase software to screen the electronic devices for pornography. Plaintiff's proposed alternative does not alleviate the need for FCCC officials to be extensively involved with screening an unlimited number of high capacity electronic devices. As noted in the Amended Complaint, FCCC officials explained they did not have the manpower to allow residents to have an unlimited quantity of electronic devices with unlimited capacities. Moreover, Plaintiff's proposed alternative does not alleviate other risks associated with an unrestricted amount of electronic devices. See Anderson v. DaCosta, Case No. 10-5835 (D.N.J. June 1, 2011) (recognizing issues posed by electronic media devices including: preventing residents from improperly using computer to engage in fraud, extortion, or other criminal activity; preventing discord that could occur between residents owning the electronic equipment targeted by those who do not; and, promoting the therapeutic environment of the facility by preventing residents' access to pornography, contact with their victims, or viewing movies that could reinforce cognitive distortions or sexual deviance). As the Seventh Circuit noted:

> Facilities that house and deal with residents who have been involuntarily committed for sexual disorders are "'volatile' environments whose day-to-day operations cannot be managed from on high. Thielman v. Leean, 282 F.3d 478, 483 (7th Cir. 2002). Courts must presume that the judgment exercised by the appropriate professionals

> in these facilities is reasonable. Id. (citing Youngberg v. Romeo, 457 U.S. 307, 312-24 (1982) (extending "professional judgment" standard to substantive due process claim brought by involuntarily civilly committed mental patient and noting that such presumption was "necessary to enable institutions of this type-often, unfortunately, overcrowded and understaffed- to continue to function.")(other citations omitted)

Belton, 2011 WL 2690595, at *8. Based on the foregoing, the Court finds the Amended Complaint fails to state a First Amendment claim arising from the restrictions in the FCCC's electronic media policy.

### 2. Fourteenth Amendment

Liberally construed, the Amended Complaint alleges a Fourteenth Amendment violation stemming from the confiscation of the electronic devices that did not comply with the revised electronic media policy. Initially, the Court notes the Amended Complaint does not specify which of Plaintiff's electronic devices were confiscated, when the confiscation took place, or why he did not mail the electronic device home prior to the effective date of the policy. See Amended Complaint. Nonetheless, the Court finds Plaintiff does not have a constitutionally recognized property interest in possession of unrestricted electronic devices.

The Fourteenth Amendment provides that the State may not "deprive any person of life, liberty, or property, without due process of law." The "due process of law" essentially requires that the government provide a person with notice and opportunity to be heard in connection with the deprivation of life, liberty, or

property. Supra at 8. Thus, "a § 1983 claim alleging a denial of procedural due process, requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003)(citing Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)). To have a property interest, Plaintiff must demonstrate "more than an abstract need or desire for it . . . He must, instead, have a legitimate claim of entitlement to it" under state or federal law. Board of Regents v. Roth, 408 U.S. 564, 577 (1972).

Here, as stated above, the restrictions on electronic devices are neither arbitrary nor capricious. The policy modifications were implemented to address security and the operational concerns at the FCCC. Plaintiff has not demonstrated a constitutionally-recognized property interest in the continued possession of unrestricted electronic devices necessary to satisfy the threshold requirement of a deprivation of a property interest. Evans v. Budz, Case No. 2:10-cv-423-FtM-29SPC, 2010 WL 2921616 (M.D. Fla. July 23, 2010) (recognizing no property interest in item that is classified as "contraband")(citing Weems v. St. Lawrence, Case No. CV409-065, 2009 WL 2422795, at *4 n.6 (S.D. Ga. Aug. 6, 2009);(Steffy v. Orman, 461 F.3d 1218, 1221 (10th Cir. 2006); Lyon v. Ferrier, 730 F.2d 525 (8th Cir. 1984); Kimble v. Michigan Dep't

of Corr., 411 F.2d 990, 991 (6th Cir. 1969)); Anderson, Case No. 10-cv-5835, 2011 WL 2223717, *13 (recognizing no property interest in unrestricted electronic devices); Smego, Case No. 10-cv-3240, 2011 WL 6140661, *1-*2 (finding no constitutional right to gaming consoles and other electronic equipment)(citing Murphy v. Walker, 51 F.3d 714, 718 (7th Cir. 1995) (pretrial detainee had no constitutional right to television or cigarettes)(other citations omitted)); Belton, Case No. 10-6462, 2011 WL 2690595, *14 (finding no constitutionally-recognized property interest in unrestricted electronic devices). Based on the foregoing, the Court finds the Amended Complaint fails to state a Fourteenth Amendment claim.

**C. Search of the Dormitory- Fourth Amendment**

The Amended Complaint alleges that in order to enforce the electronic medica policy, the residents' dormitories at the FCCC have been subjected to an "increasing number" of "shakedown searches." See Amended Complaint at ¶20. Plaintiff does not allege that his dormitory has been subjected to any shakedown searches. Id. (emphasis added). Nor does the Amended Complaint contain any allegations concerning any details of the search: who was searched, how the search was done, or when the search occurred. Id.

Initially, the Court finds this action is subject to dismissal because the Court lacks jurisdiction. In particular, "[a]rticle III of the Constitution limits the 'judicial power' of the United

States to the resolution of 'cases' and 'controversies'." <u>Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.</u>, 454 U.S. 464, 471 (1982). Significantly, the Amended Complaint contains no allegations that Plaintiff's dormitory has been subjected to any searches. Instead, the Amended Complaint generally alleges that the "resident population" has undergone more searches in attempt to enforce the electronic media policy. Plaintiff does not have standing to raise claims on behalf of other residents. Further, Plaintiff's claims of future potential harm are speculative and do not present a case or controversy. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992). In particular, Plaintiff alleges no injury in fact to invoke this Court's jurisdiction. <u>DiMaio v. Democratic Nat. Comm.</u>, 530 F.3d 1299, 1301-1302 (11th Cir. 2008).

Even if the Court assumed *arguendo* that Plaintiff's dormitory was searched to enforce compliance with the electronic media policy, the Amended Complaint would nevertheless fail to state a claim. The United States Supreme Court has determined that "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." <u>Hudson v. Palmer</u>, 468 U.S. 517, 527-28 (1984). While this Circuit has determined that prisoners "retain a *limited* constitutional right to bodily privacy"

this right must be evaluated on a "case-by-case basis." Fortner v. Thomas, 983 F.2d 1024, 1030 (11th Cir. 1993)(emphasis added); Boxer X v. Harris, 437 F.3d 1107 (11th Cir. 2006). This right to privacy is subject to further limitations that are reasonably related to "legitimate penological interests." Turner, 482 U.S. at 89; see also Pesci, 730 F.3d at 1297-99 (11th Cir. 2013).

The Court recognizes that Plaintiff, although not a "prisoner," has been confined to a "secure facility" pursuant to the SVP Act upon a probable cause determination that Plaintiff meets the statutory definition of a sexually violent predator, due to his previous state conviction for a sexually violent offense. See Fla. Stat. § 394.910. In other words, Plaintiff has been involuntarily civilly committed to the FCCC. The same concerns raised in Hudson are at issue in the instant case. See generally Hudson, 468 U.S. at 526-528 (discussing security concerns in place of involuntary confinement); Pesci, 730 F.3d at 1299 (comparing civil commitment detention center facilities to the prison context and recognizing FCCC officials are better equipped than the courts to operate the facility). Thus, the dormitory room to which Plaintiff is assigned at the FCCC, albeit not a cell, is not protected by the Fourth Amendment. Id. at 517. Plaintiff cannot reasonably argue that he has a legitimate "expectation of privacy" in his open bay dorm. Therefore, it is not a constitutional violation for the defendants to search Plaintiff's dormitory at the

FCCC. Shaarbay v. Palm Beach County Jail, 350 F. App'x 359, 362 (11th Cir. 2009)(citing Padgett v. Donald, 401 F.3d 1273, 1278 (11th Cir. 2005)(citing Hudson, 468 U.S. 517, 525-26 (1984)); see also Pesci v. Budz, Case No. 2:12-cv-227-FtM-29SPC, 2012 WL 4856746, *6 (M.D. Fla. 2012 Oct. 12, 2012)(dismissing claim stemming from search in dormitory at FCCC sua sponte).

This Court has previously found that imposing a blanket prohibition against searches of an FCCC resident's living area is inherently inconsistent with the facility's needs of ensuring security and implementing rules and regulations. See Marsh v. Dep't of Children & Families, Case No. 2:03-cv-162-FtM-29SPC, 2006 WL 2644917 (M.D. Fla. Sept. 14, 2006), aff'd other grounds, 259 F. App'x. 201 (11th Cir. 2007)(finding FCCC resident has no Fourth Amendment right to protections from searches in his FCCC room); see also Block v. Rutherford, 468 U.S. 576 (1984). Other courts confronted with the same issue agree with this Court on this matter. Belton v. Singer, Case No. 10-6462, 2011 WL 2690595 (D.N.J. July 8, 2011); Banda v. Corzine, Case No. 07-4508-(WJM), 2007 WL 3243917 (D.N.J. Nov. 1, 2007); Riley v. Doyle, Case No. 06-C-574-C, 2006 WL 2947453 (W.D. Wis. Oct. 16, 2006). Consequently, the Court finds that the Amended Complaint fails to adequately state a claim with respect to Plaintiff's Fourth Amendment claim.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The Amended Complaint is **DISMISSED, without prejudice**, pursuant to § 1915(e)(2)(b)(ii) for failure to state a claim.

2. The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** at Fort Myers, Florida, on this __31st__ day of March, 2014.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA: alr
Copies: All Parties of Record